**UNTIED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**INTERATIONAL ALLIANCE OF THEATRICAL STAGE**
**EMPLOYEES, MOVING PICTURE**
**TECHNICIANS, ARTISTS AND ALLIED CRAFTS,**          **Case:1:19-cv-12579-IT**
**LOCAL 11,**                                                                    **Hon.  Indira Talwani**
                         Plaintiff,

        vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC,**

                 Defendant.

_____

**<u>DEFENDANT'S MOTION FOR DISMISSAL OF PLAINTIFF'S COMPLAINT</u>**

Defendant Martin Sports & Entertainment, LLC ("Defendant" or "Martin Sports), by its counsel, moves pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Fed. R. Civ. P. 12 (c), and Fed. R. Civ. P. 56 for entry of an Order dismissing with prejudice and/or granting summary judgement with respect to the claims of Plaintiff International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Grafts, Local 11 ( "Plaintiff" or "Local 11") for the following reasons:

1.      The Court lacks subject matter jurisdiction over Plaintiff's claims under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S. C. §185(a), for breach of an alleged collective bargaining agreement between Local 11 and Marin Sports because these claims pertain to a dispute within the exclusive jurisdiction of the National Labor Relations Board.

2.      Plaintiff has failed to state claims upon which relief may be granted under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S. C. §185(a), for

breach of an alleged collective bargaining agreement between Local 11 and Marin Sports because these claims are barred or preempted by either section 7 or 8 of the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq. See* 29 U.S.C. § 157; 29 U.S.C. §158.

3.     There are no genuine issues of material fact remaining with respect to Plaintiff's claims under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S. C. §185(a), for breach of an alleged collective bargaining agreement between Local 11 and Marin Sports because the undisputed facts disclose that it was a "standard one time agreement" allegedly applicable only to a May 9, 2019 Boston Bruins Fan Fest event produced by Martin Sports and that it otherwise was terminable at will.

## REQUEST FOR ORAL ARGUMENT

4.     Defendant requests that oral argument be conducted concerning its motion because it believes it will assist the court in its deliberation over issues posed by the motion.

*Counsel for Defendant emailed a draft of issues raised by Defendant's Motion For Dismissal of Plaintiff's Complaint to Counsel for Plaintiffs on February 4, 2020. He inquired about whether counsel will concur in the relief requested by the motion and/or whether he wanted to meet and confer about the issues posed in the email. Counsel for Plaintiffs declined to concur. Hence, it is necessary to bring this motion before the Court for its consideration and decision.*

**Wherefore,** Defendant Martin Sports & Entertainment, LLC respectfully requests that the Court grant its Motion for Dismissal of Plaintiff's Complaint and that it enter an Order and Judgment dismissing Plaintiff's claims with prejudice and awarding to Defendant pursuant 28 U.S.C. §1927 and Fed.R.Civ. P. 11 all costs and attorneys' fees it has incurred in

defense of this action because Plaintiff's action has been brought and maintained in violation

of this statute and court rule.

Respectfully Submitted,

*/s/John F. Welsh*
John F. Welsh
BBO# 522640
Bello Welsh LLP
125 Summer Street, Suite 1200
Boston, MA 02110
Main: (617) 247-4100
Direct: (617) 247-8476
Fax: (617) 247-4125
jwelsh@bellowelsh.com

*/s/ Raymond Carey*
Ray Carey (P33266)
GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.
Attorneys for Defendants
30500 Northwestern Highway, Ste.425
Farmington Hills, MI 48334
(248) 865-0001
Dated: February 4, 2020        Rjcarey@gmgmklaw.com

## UNTIED STATES DISTRICT COURT

### FOR THE
### DISTRICT OF MASSACHUSETTS

*******************************************************

**INTERATIONAL ALLIANCE OF THEATRICAL STAGE
EMPLOYEES, MOVING PICTURE
TECHNICIANS, ARTISTS AND ALLIED CRAFTS,
LOCAL 11,**

             Plaintiff,

  vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC,**

        Defendant.

**Case:1:19-cv-12579-IT
Hon.  Indira Talwani**

<u>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR DISMISSAL OF PLAINTIFF'S
COMPLAINT**</u>

## **TABLE OF CONTENTS**

Index of Authorities ....................................................................................................... V

I.      Introduction ........................................................................................................ 1

II.     Statement of Facts ............................................................................................. 4

III.    Argument ...........................................................................................................10

        A.  Standards Applicable to Defendant's Motion ...........................................10

        B.  The Court Lacks Subject Matter Jurisdiction over Plaintiff's claims because these are subject to the primary jurisdiction of the National Labor Relations Board and Plaintiff also has failed to state claims upon which relief may be granted because its claims otherwise are preempted by sections 7 and 8 of the National Labor Relations Act ...........................................................................12

        C.  There are no genuine issues of material fact remaining with respect to Plaintiff's claims under section 301(a) of the Labor Management Relations Act, 29 U. S. C. §185(a), for breach of an alleged collective bargaining agreement between Local 11 and Marin Sports because the undisputed facts disclose that it was a "standard one time agreement" that otherwise was terminable at will ...........................................................................................................................17

IV.     Conclusion and Relief .......................................................................................20

# INDEX OF AUTHORITIES

*Amalgamated Cloth. & Text. Wkrs. v. Facetglas, Inc.*, 845 F.2d 1250, 1251 (4th Cir. 1988) .........
......................................................................................................................................... 12, 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..................................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ....................................................11

*Boeing Airplane Co. v. N.L.R.B.*, 174 F.2d 988, 991 (D.C.Cir.1949) ...................................17

*Communications Workers of America v. Southwestern Bell Telephone Co.,* 713 F.2d 1118, 1123
n. 4 (5th Cir.1983).................................................................................................17

*DLX, Inc., v. Kentucky*, 381F.3d 511, 516 (6th Cir. 2004).................................................10

*Eastern District Council of the United Brotherhood of Carpenters and Joiners of America v. Blake
Construction Co., Inc.,* 457 F.Supp. 825, 831 (E.D.Va.1978).............................................18

*Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir. 2000)......................................11

*Montgomery Mailers' Union No. 127 V. Advertiser Co.*, 827 F.2d 709, 715 (11th Cir. 1987) ....17

*Morgan v. Massachusetts General Hosp.*, 901 F.2d 186, 194 (1st Cir.1990)........................ 13, 21

*Motor Coach Employees v. Lockridge,* 403 U.S. 274, 288-89, 91 S.Ct. 1909, 29 L.Ed.2d 473
(1971)......................................................................................................... 12, 13, 14

*Murphy v. United States*, 45 F.3d 520. 522 (1st Cir. 1995)...............................................10

*Nash v. Florida Indus. Comm'n*, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438 (1967)
...........................................................................................................................11

*New Mexico Dist. Council of Carpenters, AFL–CIO v. Mayhew Co.*, 664 F.2d 215 (10th Cir.1981)
...........................................................................................................................13

*N. L. R. B. v. Local Union No. 103, 434 U.S. 335, 345-346,* 98 S.Ct. 651, 655, 54 L.Ed. 2d
586(1978)..............................................................................................................17

*Nollet v. Justices of Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D. Mass. 2000) ......................10

*Nova Plumbing, Inc. v. NLRB,* 330 F.3d 531, 534 (D.C.Cir.2003) ........................................12

*Raymond F. Kravis Center for the Performing Arts, Inc., v. N.L.R.B.*, 550 F.3d 1183, 1187-1189
(D.C. Cir. 2008)................................................................................................. 12, 14

*Retail Clerks International Association, Local Unions Nos. 128 and 633 v. Lion Dry Goods,
Inc.,* 369 U.S. 17, 25-28, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962)...............................................18

*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)......................................................................................................................... 13, 14

*Strand Theatre of Shreveport Corp. v. NLRB,* 493 F.3d 515, 518 (5th Cir.2007) ................ 12, 14

*Teixeira V. Quality Beverage LTD. Partnership*, 351 F.Supp. 3d 188, 192-193 (D. Mass. 2019) ...................................................................................................................................................20

*Textron Lycoming Reciprocating Engine Div. v. UAW,* 523 U.S. 653, 657, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998)........................................................................................................... 18, 19

*Trustees of the Atlanta Iron Workers Local 387 Pension Fund v. Southern Stress Wire Corp.,* 509 F.Supp. 1097, 1105 n. 12 (N.D.Ga.1981) ...........................................................................17

*Trustees of the Twin City Fringe Benefit Funds v. Superior Waterproofing, Inc.,* 450 F.3d 324, 330 (8th Cir.2006) ...................................................................................................................18

*Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)............................................ 13, 14

*Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir.2006) ........................................................11

**UNTIED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**INTERATIONAL ALLIANCE OF THEATRICAL STAGE**
**EMPLOYEES, MOVING PICTURE**
**TECHNICIANS, ARTISTS AND ALLIED CRAFTS,**               **Case:1:19-cv-12579-IT**
**LOCAL 11,**                                             **Hon.  Indira Talwani**

                       Plaintiff,

      vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC,**

              Defendant.


<u>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR DISMISSAL OF PLAINTIFF'S**
**COMPLAINT**</u>

## I.      INTRODUCTION

Plaintiff International Alliance of Theatrical Stage Employees, Moving Picture

Technicians, Artists and Allied Grafts, Local 11 ( "Plaintiff" or "Local 11") has asserted

claims against Defendant Martin Sports & Entertainment, LLC ("Defendant" or "Martin

Sports") under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S. C.

§185(a), for breach of an alleged collective bargaining agreement between Local 11 and

Marin Sports. Local 11 claims that Martin Sports and Local 11 entered into a collective

bargaining agreement, that Martin Sports breached the agreement when it failed and

refused to hire employees referred by Local 11 to perform alleged bargaining unit work

associated with Boston Bruins' Fan Fest events produced by Marin Sports before the

Boston Bruins' home hockey games held on June 6 and 12 and October 12 and 14, 2019,

and that Local 11 members were wrongfully denied work opportunities and associated

wages and benefits as a consequence. *See* Plaintiff's' Complaint, ¶¶ 5-11 and Exhibit A to Plaintiff's Complaint.

Local 11 necessarily alleges by implication in support of its claims that it was the designated bargaining representative of individuals who were eligible to work for Martin Sports on  June 6 and 12 and October 12 and 14, 2019, in accordance with the requirements of either section 8 (f) or 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§151, *et seq*.,  *see* 29 U.S.C. §§158(f), 159(a), and that the alleged collective bargaining agreement between Martin Sports and Local 11 was permissibly obtained either in accordance section 8(f) or through collective bargaining mandated by sections 8(a)(5), 8 (b)(3),  and 8(d) of the NLRA, 29 U.S.C. §§158(a)(5), 158(b)(3), and 158(d). The alleged collective bargaining agreement contains no dispute resolution, contract term, or termination provisions.  *See* Exhibit A to Plaintiff's Complaint, pp. 1-5. Moreover, Local 11 did not engage Martin Sports in any bargaining with it over the terms of the alleged agreement. *See* Defendant's Answer, ¶¶ 1, 5-11 and Special and Affirmative Defenses 1-14; Exhibit 1: Declaration of David Martin, ¶¶1-20; Exhibit 2: Declaration of Theresa Martin, ¶¶ 1-25.

Martin Sports has denied the allegations asserted by Local 11. It asserts that the alleged collective bargaining agreement is unenforceable because: it is not a valid agreement within the meaning of 29 U. S. C. §158(f) or one obtained consistent with the requirements of 29 U.S. C. §159(a); it was procured by acts of fraud and misrepresentation by Colleen A. Glynn ("Glynn") as a business agent for Local 11; there was no requisite bargaining over, consideration for, acceptance of, or mutuality with respect to the terms of the alleged agreement as required by sections 8(a)(5), 8 (b)(3),  and 8(d) of the NLRA, 29 U.S.C. §§158(a)(5), 158(b)(3), and 158(d); the alleged agreement was signed by someone without authority to bind Martin Sports and without authorization from Martin Sports; and it was

represented by Glynn to Theresa Martin, an administrative assistant for Martin Sports, that the alleged agreement was a "standard one time agreement." *See* Defendant's Answer, ¶¶ 1, 5-11 and Special and Affirmative Defenses 1-14; Exhibit 1: Declaration of David Martin, ¶¶ 1-20; Exhibit 2: Declaration of Theresa Martin, ¶¶ 1-25.

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Fed. R. Civ. P. 12 (c), and Fed. R. Civ. P. 56 for entry of an Order dismissing with prejudice and/or granting summary judgement with respect to Local 11's claims under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U. S. C. §185(a), for breach of an alleged collective bargaining agreement between Local 11 and Marin Sports because:

a. These claims pertain to a dispute within the exclusive jurisdiction of the National Labor Relations Board and the claims otherwise are barred or preempted by either section 7 or 8 of the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.* *See* 29 U.S.C. § 157; 29 U.S.C. §158; and

b. There are no genuine issues of material fact remaining with respect to Plaintiff's claims under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U. S. C. §185(a), for breach of an alleged collective bargaining agreement between Local 11 and Marin Sports because the undisputed facts disclose that it was a "standard one time agreement" allegedly applicable only to the May 9, 2019 Fan Fest event and that it otherwise was terminable at will.

Defendants are entitled to the requested relief for each of the reasons stated in their motion and in this brief.

## II. STATEMENT OF FACTS

Defendant Martin Sports is a Michigan limited liability corporation engaged in the sports promotion business. It conducts sports promotion events for various professional sports teams which are its customers at various locations around the county. *See* Exhibit 1: Declaration of David Martin, ¶¶ 1-2. Mr. David Martin is its sole member or owner and its President and CEO. Exhibit 1: Declaration of David Martin, ¶¶1-3. His wife, Theresa Martin, is an administrative assistant for Martin Sports.  She is not a member, owner or officer of the company, and she does not have authority to sign contracts of any kind on its behalf. *See* Exhibit 1: Declaration of David Martin, ¶ 4.

Martin Sports does not employ on a permanent basis its own hourly paid work force for installation and removal of stages and other equipment used for its sports promotion events at various locations around the county. Instead, it typically retains stagehands and other labor for this purpose on a casual and event by event basis. They are recruited by Martin Sports through help wanted advertisements or referred to it by various local unions around the county which are affiliated with International Alliance of Theatrical Stage Employees ("IATSE") and with which Martin Sports has established a referral relationship. *See* Exhibit 1: Declaration of David Martin, ¶5. Theresa Martin assists with scheduling and retention of such labor. *See* Exhibit 2: Declaration of David Martin, ¶6. IATSE affiliated unions have typically referred stagehands and other labor to Martin Sports for its events on a casual and event by event basis at regular or straight time hourly wage rates without a requirement that Martin Sports bargain over, enter into, or abide by the terms of collective bargaining agreements with the local unions. *See* Exhibit 1: Declaration of David Martin, ¶7.

4

On May 9, 12, 27 and 29, Martin Sport produced Boston Bruins' Fan Fest events before the Boston Bruins' hockey playoff home games.  *See* Plaintiffs' Complaint, ¶9; Exhibit 1: Declaration of David Martin, ¶8. Consistent with past practice between Martin Sports and IATSE affiliated unions, on May 8, 2019, Theresa Martin contacted Colleen Glynn, a business agent for Local 11, and requested that the Local refer a crew of 10 stagehands to Martin Sports to work an 8 hour shift at regular or straight time wage rates beginning at 9 a.m. on May 9, 2019, to install a stage for a Bruins Fan Fest event. *See* Exhibit 1: Declaration of David Martin, ¶9; Exhibit 2: Declaration of Theresa Martin, ¶7. Ms. Glynn acknowledged and accepted the terms of the stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶7.

However, Ms. Glynn later sent what she described as a "standard one time agreement" to Ms. Martin for her to sign ostensibly as confirmation of the referral arrangement between Martin Sports and Local 11. *See* Exhibit 1: Declaration of David Martin, ¶10; Exhibit 2: Declaration of Theresa Martin, ¶8. Ms. Glynn did not disclose any inconsistencies between the agreement and the terms of the stagehand referral acknowledged and accepted by her on behalf of Local 11. She also did not invite Theresa Martin or any authorized representative of Martin Sports to engage in or engage any of them in bargaining of any kind pertaining the terms of the agreement. *See* Exhibit 2: Declaration of Theresa Martin, ¶8. Theresa Martin signed the agreement and returned it to Ms. Glynn on May 9, 2019, based on Ms. Glynn's representations and assurances that the agreement conformed with the terms of the stagehand referral acknowledged and accepted by Ms. Glynn on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶9. She did so without authorization from her husband and although he had not reviewed or accepted the terms of the agreement as Martin

Sports' owner. *See* Exhibit 1: Declaration of David Martin, ¶11; Exhibit 2: Declaration of Theresa Martin, ¶9.

Later, on May 9, 2019, Theresa Martin sent an email to Ms. Glynn and requested that she refer a different 6-person crew to work a 4-hour shift at regular or straight time wage rates beginning at 10:30 p.m. on May 9, 2019, to remove the Fan Fest stage because of a police department requirement. *See* Exhibit 2: Declaration of Theresa Martin, ¶10. Crews allegedly referred by Local 11 to Martin Sports performed the Bruin Fan Fest stage installation and removal on May 9, 2019[1]. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶11.

During the period between May 10-11, 2019,  Theresa Martin contacted Ms. Glynn and requested that Local 11 refer a 10-person crew on May 12, 2019, beginning at 8 a.m. for a 4 to-5 hour shift at regular or straight time wage rates for another Bruins Fan Fest stage installation and a different 10-person crew of 10 beginning at 6 p.m. on May 12, 2019, for a 4 hour shift at regular or straight time wage rates to remove the stage. *See* Exhibit 2: Declaration of Theresa Martin, ¶12. She also advised Ms. Glynn that Martin Sports had a limited budget with no ability to pay overtime rates and that Ms. Glynn should let her know if this was problematic. *See* Exhibit 2: Declaration of Theresa Martin, ¶12. Ms. Glynn acknowledged and accepted the terms of this stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶12. Crews allegedly referred by Local 11

---

[1] None of the stagehands allegedly referred to Martin Sports by Local 11 on May 9, 12, 27, and 29, 2019, provided Martin Sports with contact information and timesheets of any kind pertaining to their work hours. *See* Exhibit 1: Declaration of David Martin, ¶13; Exhibit 2: Declaration of Theresa Martin, ¶14, 21.

performed the Fan Fest stage installation and removal on May 12, 2019. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶13.

On May 20, 2019, Martin Sports was sent an invoice from Art Payroll in the amount of $24, 581.86 for the May 9 and 12, 2019 Bruin Fan Fest stage installations and removals. The invoice disclosed that Martin Sports was billed for excessive contributions to the plans and for excessive wages attributed to work allegedly performed by Anderson and those he purports to represent; that it was billed  for many alleged work hours at one and a half or double the regular wage rates applicable to the various stagehand classifications; and that it was billed for and for many hours when stagehands did not actually perform work. *See* Exhibit 1: Declaration of David Martin, ¶14; Exhibit 2: Declaration of Theresa Martin, ¶15.

In particular, contrary to what Theresa Martin requested on May 8, 2019, for work performed on May 9, 2019, Art Payroll billed Martin Sports for: 4 stagehands who purportedly worked at straight time wage rates for 8 hours; 4 who purportedly worked at straight time wage rates for 6 hours and 2 hours at double time; and 6 who purportedly worked at straight time wage rates for 14 hours and double time for 2 hours. Martin Sports was erroneously billed for 160 work hours instead of the 104 work hours needed for the May 9, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶15; Exhibit 2: Declaration of Theresa Martin, ¶16.  The May 20, 2019 invoice also evinced, contrary to what Theresa Martin requested on May 10-11, 2019, for work performed on May 12, 2019, that Art Payroll billed Martin Sports for 12 people who purportedly worked 8 hours at time and a half and 4 people who purportedly worked 16 hours at time and a half. Martin Sports was erroneously billed for 240 hours instead of the 80 to 90 hours needed for

the May 12, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶16; Exhibit 2: Declaration of Theresa Martin, ¶17.

On May 25, 2019, Theresa Martin contacted Ms. Glynn and requested that Local 11 refer a crew of 6 stagehands and 1 fork lift driver beginning at 7 a.m. on May 27, 2019, for a 5 hour shift at straight time rates for Fan Fest stage installation and a crew of 6 stagehands and 1 fork lift driver beginning at 8 p.m. on May 27, 2019, for a 4 hour shift at straight time rates for Fan Fest stage removal. *See* Exhibit 2: Declaration of Theresa Martin, ¶18. Ms. Martin advised Ms. Glynn that the budget for these services was limited to $5000. *See* Exhibit 3: Declaration of Theresa Martin, ¶18. Ms. Glynn acknowledged and accepted the terms of the stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶18. Crews allegedly referred by Local 11 performed the Fan Fest stage installation and removal on May 27, 2019. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶20.

On May 28-29 2019,  Theresa Martin contacted Ms. Glynn requesting that Local 11 refer a crew of 6 stagehands and 1 fork lift driver beginning at 8 a.m. on May 29, 2019,  for a 5 hour shift at straight time wage rates for Fan Fest stage installation and a crew of 6 stagehands and 1 fork lift driver beginning at 8 p.m. on May 29, 2019, for a 4 hour shift at straight time wage  rates for Fan Fest stage removal. *See* Exhibit 2: Declaration of Theresa Martin, ¶19. Ms. Martin advised Ms. Glynn that the budget for these services was limited to $5000. Ms. Glynn acknowledged and accepted the terms of the stagehand referral on behalf of Local 11. *See* Exhibit 2: Declaration of Theresa Martin, ¶19. Crews allegedly referred by Local 11 performed the Fan Fest stage installation and removal on May 29, 2019. *See* Exhibit 1: Declaration of David Martin, ¶12; Exhibit 2: Declaration of Theresa Martin, ¶20.

On June 4, 2019, Martin Sports was sent an invoice from Art Payroll in the amount of $10, 794.09 for the May 27 and 29, 2019 Fan Fest stage installations and removals. The invoice disclosed that Martin Sports was billed for excessive contributions to the plans and for excessive wages attributed to  work allegedly performed by Anderson and those he purports to represent; that it was billed  for many alleged work hours at one and a half or double the regular wage rates applicable to the various stagehand classifications; and that it was billed for and for many hours when stagehands did not actually perform work. *See* Exhibit 1: Declaration of David Martin, ¶17; Exhibit 2: Declaration of Theresa Martin, ¶22.

In particular, contrary to what Theresa Martin requested on May 25, 2019, for work performed on May 27, 2019, Art Payroll billed Martin Sports for: 2 stagehands who purportedly worked at time and a half for 5 hours and 5 who purportedly worked at time and a half for 9 hours. Martin Sports was erroneously billed for 82.5 hours instead of the 63 hours needed for the May 27, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶18; Exhibit 2: Declaration of Theresa Martin, ¶23. The June 4, 2019 invoice also evinced, contrary to what Theresa Martin requested on May 28-29, 2019, for work performed on May 29, 2019, that Art Payroll billed Martin Sports for: 5 stagehands who purportedly worked at time and a half for 4 hours and 5 who purportedly worked at straight time wage rates for 8 hours. Martin Sports was erroneously billed for 70 hours instead of the 63 hours needed for the May 29, 2019 stage installation and removal. *See* Exhibit 1: Declaration of David Martin, ¶19; Exhibit 2: Declaration of Theresa Martin, ¶24.

Martin Sports gave notice to Local 11 on June 4, 2019, that it was terminating the alleged agreement sent by Ms. Glynn to Theresa Martin on May 8, 2019.  It sent the notice because it never intended to enter into and/or to accept the terms of a collective bargaining

agreement like the one sent by Ms. Glynn to Theresa Martin; Ms. Glynn deceptively induced Theresa Martin into signing it; Local 11 or Art Payroll overcharged Martin Sports for costs of labor contrary to terms to which Martin Sports and Local 11 had agreed; and Local 11 and/or Art Payroll refused to provide invoices to Martin Sports for costs of labor that comport with the terms to which Martin Sports and Local 11 had agreed. *See* Exhibit 1: Declaration of David Martin, ¶20; Exhibit 2: Declaration of Theresa Martin, ¶25; Defendants' Answer, ¶¶ 10-12, 15-21 and Special and Affirmative Defenses 1-17.

## III.   ARGUMENT

**PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R.CIV. P. 12(b)(1) AND (6) AND FED. R.CIV. P.12(c)**

### A.   Standards Applicable to Defendants' Motion

**Fed. R. Civ. P. 12(b)(1)**

Under Rule12(b)(1) of the Federal Rules of Civil Procedure, a defendant may challenge whether a court has requisite subject matter jurisdiction based on the allegations of the complaint, which the court deems to be true for purposes of Rule 12 (b)(1) analysis. , *Muniz-Rivera v. United States*, 326 F.3d 8,  11 (1st Cir. 2003).  The plaintiff bears the burden of proving that jurisdiction exists. *Murphy v. United States*, 45 F.3d 520. 522 (1st Cir. 1995) *DLX. Inc., v. Kentucky*, 381F.3d 511, 516 (6th Cir. 2004).

**Fed. R. Civ. P. 12(b)(6)**

A complaint fails to state an actionable claim subject to dismissal under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When it deliberates over the merits of a motion to dismiss predicated on the allegations made in a complaint, the Court should consider only the facts alleged in the complaint, documents attached as exhibits to or incorporated by

reference in the complaint, and matters of which judicial notice can be taken. *Nollet v. Justices of Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).

To survive a motion to dismiss, a plaintiff must plead "enough factual matter" that, when taken as true, "raise[s] a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). *See also Iqbal*, 556 U.S. at 678-679. A plaintiff's claim is sufficient to avoid dismissal only if the court is able based on review of the complaint and attached or referenced documents to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

This standard of review requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" by the plaintiff. *Twombly*, 550 U.S. at 555-556, 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678-679, quoting *Twombly*, 550 U.S. at 557[2].

**Fed. R. Civ. P. 56**

A party moving for summary judgment is entitled to this relief if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). "An issue is genuine if it can be resolved in favor of either party, and a fact is material if it has the potential of affecting the outcome of the case." *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016) (internal quotation marks omitted) (quoting

---

[2] A Rule 12 (c) motion for judgment on the pleadings requires application of the same standards that govern motions to dismiss under Rule 2(b)(6). *See* Fed.R.Civ.P.12(c); *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir.2006).

*Perez-Codero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 91ˢᵗ Cir. 2011)). Although all reasonable inferences derived from the facts are resolved in favor of the non-movant, courts must nevertheless "ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers,* 536 F.3d 68. 75 (1ˢᵗ Cir. 2008) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5. 8 (1ˢᵗ Cir. 1990)).

**B. The Court Lacks Subject Matter Jurisdiction over Plaintiff's claims because these are subject to the primary jurisdiction of the National Labor Relations Board and Plaintiff also has failed to state claims upon which relief may be granted because its claims otherwise are preempted by sections 7 and 8 of the National Labor Relations Act**

The National Labor Relations Act, as amended ("NLRA"), 29 U.S.C. §§151, *et seq.*, "is a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." *Nash v. Florida Indus. Comm'n*, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438 (1967). The NLRA reflects congressional intent to create a uniform, nationwide body of labor law interpreted by a centralized expert agency—the National Labor Relations Board ("NLRB"). *Id.* In matters of collective bargaining, federal regulation is exclusive and is vested in the NLRB. See *Motor Coach Employees v. Lockridge*, <u>403 U.S. 274, 288-89</u>, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) (summarizing rationale for preemption as it relates to the need for a uniform national labor policy).

The NLRA vests the NLRB with exclusive jurisdiction to resolve issues pertaining whether employees wish to be represented by a union, identification of an appropriate collective-bargaining unit, certification of an exclusive bargaining agent. *See* 29 U.S.C.A. § § 157, 59. *See also Amalgamated Cloth. & Text. Wkrs. V. Facetglas, Inc.*, 845 F.2d 1250, 1251 (4ᵗʰ Cir. 1988). It determines in accordance with section 9(a) of the NLRA, whether an employer

is required to bargain with a union that has been "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes," 29 U.S.C. § 159(a), or under the construction industry exception included in section 8(f) of the NLRA, 29 U.S.C. § 158(f), whether an employer and a union permissibly entered into a collective bargaining agreement with less than a majority of employees authorizing the union's representation. *Raymond F. Kravis Center for the Performing Arts, Inc., v. N.L.R.B.*, 550 F.3d 1183, 1187-1189 (D.C. Cir. 2008), enforcing 351 N.L.R.B. 143, 182 LRRM 1486 (2007); *Strand Theatre of Shreveport Corp. v. NLRB,* 493 F.3d 515, 518 (5th Cir.2007) (citing 29 U.S.C. § 158(f); *Nova Plumbing, Inc. v. NLRB,* 330 F.3d 531, 534 (D.C.Cir.2003)). The NLRA also vests the NLRB with primary jurisdiction to determine whether an employer has complied with its bargaining obligations consistent with the requirements of sections 8(a)(1) and (5) and 8(d), 29 U.S.C. 158(a)(1) and (5) and 158(d), whether a section 8(f) or 9 (a) union has complied with its bargaining obligations consistent with the requirements of sections 8(b)(3) and 8(d), 29 U.S.C. 158(b)(3) and 158(d), and over unfair labor practices committed by a union or employer. *See* 29 U.S.C. §158.

Section 8(a) of the NLRA states in pertinent part that "[i]t shall be an unfair labor practice for an employer-to interfere with...employees in the exercise of rights guaranteed in section 157 of this title[3]" and "to refuse to bargain collectively with the representative of his employees..."  29 U.S.C. §158(a)(1) and (5).  Section 8(b) of the NLRA states in pertinent part that "[i]t shall be an unfair labor practice for a labor organization or its agents-to refuse to bargain collectively with an employer provided it is the representative of his employees

---

[3] Section 157 provides that employees have the right to bargain collectively through representatives of their own choosing, among other rights. 29 U. S. C. 157.

subject to" section 9(a) of the NLRA. 29 U.S.C. §158(b)(3). Section 8(d) of the NLRA, 29 U.S.C. §158(d), delineates the elements applicable to both an employer's and a union's duties to bargain collectively.

The Supreme Court has held that "[w]hen an activity is arguably subject to §7 or §8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board " and claims premised on such conduct are deemed to be preempted by the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). *See also Lockridge,* 403 U.S. at 276. The Supreme Court has interpreted this to mean that "as a general rule, neither state nor federal courts have jurisdiction over suits directly involving 'activity [which] is arguably subject to § 7 or § 8 of the Act.'" *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (emphasis added; and quoting *Garmon*, 359 U.S. at 245). *See also Morgan v. Massachusetts General Hosp*., 901 F.2d 186, 194 (1st Cir.1990) ("as a general rule, the [NLRB] has 'exclusive jurisdiction to find, prevent, and rectify unfair labor practices' ") (quoting *New Mexico Dist. Council of Carpenters, AFL–CIO v. Mayhew Co*., 664 F.2d 215 (10th Cir.1981); and collecting cases). According to the Supreme Court in *Garmon*, "courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." *Garmon*, 359 U.S. at 244. A primary justification for the preemption doctrine is "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose."  *Vaca*, 386 U.S. at 180–81, 87 S.Ct. at 912.

14

In order to grant Local 11 the relief it seeks in this action, this Court will have to determine whether Local 11 was a duly certified bargaining representative under either section 8(f) or 9(a) of the NLRA for the stagehands who performed work for Martin Sports at Bruin Fan Fests events held on May 9, 12, 27, and 29, 2019, and whether Ms. Glynn's mere forwarding of the proposed collective bargaining agreement to Martin Sports was sufficient to demonstrate that it also complied with its obligation to bargain in good faith with Martin Sports as required by sections 8(b)(3) and 8(d) of the NLRA, 29 U.S.C. §§ 158(b)(3), 158(d), to achieve the alleged collective bargaining agreement. The outcome of its deliberations in this regard also will be determinative of whether Martin Sports was required to give and the efficacy of the notice of termination of the alleged collective bargaining agreement that it gave to Local 11. *See* pp. 17-20, *infra*. Thus, whether the alleged collective bargaining agreement between Martin Sports and Local 11 is valid and enforceable poses issues pertaining to representation and good faith bargaining over which the NLRB has exclusive jurisdiction, among other issues. *See Lockridge*, <u>403 U.S. at 288-89</u>; *Raymond F. Kravis Center for the Performing Arts, Inc.,* 550 F.3d at 1187-1189; *Strand Theatre of Shreveport Corp.,* 493 F.3d at 518-20; *Amalgamated Clothing & Textile Workers Union,* 845 F.2d at 1253 (noting that where "the [district] court could not possibly determine whether there has been a violation of the collective bargaining agreement without first deciding whether the union was elected as the employees' bargaining representative," it should not exercise jurisdiction under section 301 of the LMRA (internal quotation marks omitted)).

Local 11 likely will argue that a claim under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185(a), is an exception to the *Garmon* preemption doctrine. *William E. Arnold Co. v. Carpenters District Council,* 417 U.S. 12, 15-16, 94 S.Ct. 2069,

15

2071-72, 40 L.Ed.2d 620 (1974); *Smith v. Evening News Association,* 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962). However, section 301(a) does not "vest in the courts initial authority to consider and pass upon questions of representation." *Local No. 3-193 International Woodworkers v. Ketchikan Pulp*, 611 F.2d 1295, 1298-1301 ( 9th Cir. 1980), (quoting *South Prairie Constr. Co. v. Local 627, Int'l Union of Operating Engineers,* 425 U.S. 800, 806, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) and distinguishing *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) (in which the Court held that federal courts have jurisdiction under Section 301 to enforce the arbitration clause of a collective bargaining agreement even if the contract issue to be interpreted involved a question of representational status because "a decisive factor in the *Carey* case was the very strong policy favoring the invocation of arbitration to resolve all kinds of labor disputes under collective bargaining agreements providing for arbitration")). Since the decision of the Court in *Carey,* Circuit Courts have consistently held that when a dispute is "primarily representational" under section 7 or 8 of the NLRA, "simply referring to the claim as a `breach of contract' [is] insufficient for the purposes of § 301 federal courts' jurisdiction." *Intern. Broth. Of Elec. Workers v. Trafftech, Inc.*, 461 F.3d 690, 694-695 (6th Cir. 2006), citing *Paper Workers Int'l Union v. Air Prods. & Chems., Inc.,* 300 F.3d 667, 672, 675 (6th Cir.2002) and other cases.

Thus, representational issues still lie "largely within the discretion of the Board," and it is "incompatible with the orderly function of the process of judicial review" for a court to render initial determinations of representational issues. *South Prairie Constr. Co., v. Local No. 627, Int'l Union of Operating Eng'rs,* 425 U.S. at 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (quoting *NLRB v. Metropolitan Life Ins. Co.,* 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d

951 (1965)). Federal courts must give "due observance [to] the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution." *Id.* 425 U.S. at 806, 96 S.Ct. at 1845 (quoting *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 141, 60 S.Ct. 437, 440, 84 L.Ed. 656 (1940)).

Therefore, the Court lacks subject matter jurisdiction to decide the merits of Plaintiff's claims under section 301(a) of the Labor Management Relations Act, 29 U.S.C. §185(a), and these claims otherwise are barred or preempted by section 7 or 8 of the NLRA. Accordingly, for each of these reasons, Plaintiffs' Complaint should be dismissed with prejudice.

**C.** **There are no genuine issues of material fact remaining with respect to Plaintiff's claims under section 301(a) of the Labor Management Relations Act, 29 U.S.C. §185(a), for breach of an alleged collective bargaining agreement between Local 11 and Marin Sports because the undisputed facts disclose that it was a "standard one time agreement" that otherwise was terminable at will.**

Collective bargaining agreements of indefinite duration and which do not provide a manner for termination contravene federal labor policy and are deemed to be terminable at will upon reasonable notice to the other party. *See, e.g., Montgomery Mailers' Union No. 127 V. Advertiser Co.,* 827 F.2d 709, 715 (11th Cir. 1987); *Communications Workers of America v. Southwestern Bell Telephone Co.,* 713 F.2d 1118, 1123 n. 4 (5th Cir.1983); *Boeing Airplane Co. v. N.L.R.B.,* 174 F.2d 988, 991 (D.C.Cir.1949); *Trustees of the Atlanta Iron Workers Local 387 Pension Fund v. Southern Stress Wire Corp.,* 509 F.Supp. 1097, 1105 n. 12 (N.D.Ga.1981), *rev'd on other grounds,* 724 F.2d 1458 (11th Cir.1983). Courts have held that the termination provision of section 8(d) of the NLRA, 29 U.S.C. § 158(d), applies to the termination of a collective bargaining agreement of indefinite duration that had been the product of collective bargaining between an employer and a union certified in accordance with section 9(a) of the

NLRA, 29 U.S.C. § 159(a). This provision requires the service of written notice of termination on the other party at least sixty days prior to the proposed termination. 29 U.S.C. § 158(d).

However, not all contracts between labor unions and employers rise to the level of being collective bargaining agreements. *Retail Clerks International Association, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 25-28, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962). As viewed by the National Labor Relations Board, a section 8(f) pre-hire agreement is merely a preliminary step that contemplates further action for the development of a full bargaining relationship. *N. L. R. B. v. Local Union No. 103, 434 U.S. 335, 345-346,* 98 S.Ct. 651, 655, 54 L.Ed. 2d 586(1978). A section 8(f) pre-hire agreement is not the product of collective bargaining. It is merely an agreement to abide by the terms of collective bargaining agreements reached by other parties. For this reason, courts have held that the written notice provision of section 8(d) is inapplicable to the termination of pre-hire agreements of indefinite duration. *See,e.g., Eastern District Council of the United Brotherhood of Carpenters and Joiners of America v. Blake Construction Co., Inc.,* 457 F.Supp. 825, 831 (E.D.Va.1978).

Were this Court to conclude that it has jurisdiction over Plaintiff's claims under section 301(a) for breach of the alleged collective bargaining agreement, Martin Sports still is entitled to dismissal with prejudice of and/or summary judgment with respect to these claims[4]. This conclusion ensues because no genuine issues of material fact remain with

_____

[4] The Supreme Court has interpreted section 301(a) narrowly, holding that it embraces suits "filed *because a contract has been violated." Textron Lycoming Reciprocating Engine Div. v. UAW,* 523 U.S. 653, 657, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) (emphasis in original). Were this case properly before the Court under section 301(a), the Court will also have jurisdiction to review the validity of the alleged collective bargaining agreement between Martin Sports and Local 11. While the decision in *Textron* narrows the jurisdictional grant created in section 301(a), *see Trustees of the Twin City Fringe Benefit Funds v. Superior Waterproofing, Inc.,* 450 F.3d 324, 330 (8th Cir.2006), no language in *Textron* limits a district court's power once

respect to these claims since the undisputed facts disclose that the alleged collective bargaining agreement between Martin Sorts and Local 11 was a "standard one time agreement" applicable only to the May 9, 2019 Fan Fest event, that it contains no dispute resolution, contract durational term, or termination provisions, *see* Exhibit A to Plaintiff's Complaint, pp. 1-5, that it otherwise was terminable at will, and that Martin Sports gave written notice of termination on June 4, 2019, before the June 6 and 12 and October 12 and 14, 2019 Fan Fest Events were held.

In this regard, Martin Sports was not required to even give notice of termination because Glynn represented on May 9, 2019, that the alleged collective bargaining agreement was a "standard one time agreement." Hence, it arguably was applicable only to the May 9, 2019 Fan Fest event. *See* Exhibit 1: Declaration of David Martin, ¶¶ 10-11; Exhibit 2: Declaration of Theresa Martin, ¶¶ 8-9. Notwithstanding, Local 11 otherwise conceded in its Complaint and the undisputed facts disclose that Martin Sports gave written notice to Local 11 on June 4, 2019, that it was terminating the alleged agreement. *See* Plaintiff's Complaint, ¶ 7; Exhibit 1: Declaration of David Martin, ¶20; Exhibit 2: Declaration of Theresa Martin, ¶25; Defendants' Answer, ¶¶ 10-12, 15-21 and Special and Affirmative Defenses 1-17. This was effective notice of termination with respect to the June 6 and 12 and October 12 and 14, 2019 Fan Fest Events were Local 11 deemed to be a Section 8(f) representative and/or were

---

jurisdiction is established. According to the Court in *Textron*, section 301(a) merely "erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse." 523 U.S. at 658, 118 S.Ct. 1626; *see also Superior Waterproofing*, 450 F.3d at 330 ("[O]nce any party to an action asserts a contractual violation there is broad subject matter jurisdiction under § 301 to adjudicate related issues of contract validity such as fraud.").

the alleged collective bargaining agreement deemed to be an enforceable pre-hire agreement. This also was effective notice of termination with respect to the October 12 and 14, 2019 Fan Fest Events were Local 11 deemed to be a Section 9(a) representative and were the 60-day written notice provision of section 8(d) of the NLRA deemed applicable since October 12 and 14, 2019, occurred more than 60 days after June 4, 2019.

Accordingly, for these reasons, the Court should enter an Order dismissing with prejudice and/or summary judgment with respect to Plaintiff's claims under section 301(a) of the Labor Management Relations Act, 29 U.S. C. §185(a).

## IV. CONCLUSION AND RELIEF

Defendant Martin Sports & Entertainment, LLC respectfully requests that the Court grant its Motion for Dismissal of Plaintiff's Complaint and that it enter an Order and Judgment dismissing Plaintiff's claims with prejudice and awarding to Defendant pursuant 28 U.S.C. §1927 and Fed.R.Civ. P. 11 all costs and attorneys' fees it has incurred in defense of this action because Plaintiff's action has been brought and maintained in violation of this statute and court rule.

Respectfully Submitted,

/s/John F. Welsh
John F. Welsh
BBO#522640
Bello Welsh LLP
125 Summer Street, Suite 1200
Boston, MA 02110
Main: (617) 247-4100
Direct: (617) 247-8476
Fax: (617) 247-4125
jwelsh@bellowelsh.com

*/s/ Raymond Carey*
Ray Carey (P33266)
GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.
Attorneys for Defendants
30500 Northwestern Highway, Ste.425
Farmington Hills, MI 48334
(248) 865-0001
Dated: February 4, 2020          Rjcarey@gmgmklaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the attached document was served on February 4, 2020, upon all parties and/or attorneys of record in this matter at their respective addresses as disclosed by pleadings in this mater via ECF Filing.

*/s/ Randi Donegan*
Randi Donegan

**UNTIED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF MASSACHUSETTS**


**INTERATIONAL ALLIANCE OF THEATRICAL STAGE
EMPLOYEES, MOVING PICTURE
TECHNICIANS, ARTISTS AND ALLIED CRAFTS,
LOCAL 11,**                                     **Case:1:19-cv-12579-IT**
                              Plaintiff,          **Hon.  Indira Talwani**

   vs.

**MARTIN SPORTS & ENTERTAINMENT, LLC,**

              Defendant.


**INDEX OF EXHIBITS**


**Exhibit 1:** Declaration of David Martin


**Exhibit 2:** Declaration of Theresa Martin